Filed 1/29/16  P. v. Givhan CA2/8

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| THE PEOPLE,<br><br>          Plaintiff and Respondent,<br><br>     v.<br><br>JOHN V. GIVHAN,<br><br>          Defendant and Appellant. | B259172<br><br>(Los Angeles County<br> Super. Ct. No. TA131792) |

APPEAL from the judgment of the Superior Court of Los Angeles County. Michael J. Schultz, Judge.  Affirmed.

Stephanie L. Gunther, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Michael R. Johnsen and Alene M. Games, Deputy Attorneys General, for Plaintiff and Respondent.

\* \* \* \* \* \* \* \* \* \*

Defendant and appellant John V. Givhan appeals from a judgment of conviction entered after a jury found him guilty of one count of second degree burglary and one count of petty theft with a prior. Defendant contends (1) the court violated his constitutional right to present a defense by erroneously excluding evidence of his lack of motive; (2) the court instructed the jury with two prejudicial and argumentative instructions (CALCRIM Nos. 371 and 376); (3) the prosecutor committed numerous acts of misconduct during closing argument; (4) his defense counsel provided ineffective assistance by failing to timely object to the prosecutor's misconduct; and (5) this court should review the sealed proceedings related to his pretrial motion brought pursuant to *Pitchess v. Superior Court* (1974) 11 Cal.3d 531 (*Pitchess*) to determine whether any discoverable materials were wrongfully withheld.

Finding no prejudicial error, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

On January 24, 2013, Tony Guerrero, a deputy with the Los Angeles County Sheriff's Department, was on patrol with his partner, Deputy Kunz, near the city of Lynwood in a marked patrol car. Auto burglaries are common in the neighborhood. At approximately 3:30 a.m., while driving eastbound on 109th Street, they saw a green Honda driving slowly (two to three miles per hour), without any lights on. They conducted a traffic stop of the Honda.

As Deputy Guerrero began to speak to defendant, who was seated in the driver's seat of the Honda, a male pedestrian appeared from between the parked cars about five to ten yards away. He identified himself as Francisco Hernandez, who knew defendant from the neighborhood.

Deputy Guerrero asked defendant what he was doing in the area driving without any lights on. He also saw there were several pieces of broken porcelain sparkplugs lying on the dashboard. Deputy Guerrero knew from his experience that porcelain sparkplugs are commonly used by criminals to "shatter glass." They apparently "make no noise" when so used. He asked defendant to get out of the car.

2

The entire backseat of defendant's car was covered in personal items, such as clothing, a pair of roller blades, a portable radio, a "couple of computer bags," and two car batteries. When asked about the items, defendant initially told the deputies he was homeless and the items belonged to him. The deputies detained defendant and looked briefly along the street for any parked cars that appeared to have been burglarized, but found none. Deputy Guerrero then asked defendant again if the property in the car belonged to him, and defendant said that a friend had given him the items. Deputy Guerrero asked for the friend's name and contact information to verify his story, but defendant "refused."

Defendant was released and he drove off in the Honda with Mr. Hernandez.

Deputies Guerrero and Kunz continued to patrol the area, looking for signs of burglarized vehicles. Within a few minutes, and only about four blocks from where they had detained defendant, they saw an older model white Ford Taurus on 107th Street with the hood up and one of the windows shattered. They stopped and looked at the car and saw that the battery was missing. Deputy Guerrero radioed for a backup unit to look for defendant. The other unit detained defendant less than two miles away.

In the meantime, Deputy Guerrero ran the license plate on the Ford and found the owner's information. His name was Salvador Aceves, and he lived across the street from where the car was parked. The deputies knocked on the front door and notified Mr. Aceves that his car had been burglarized. They asked him to come outside. Mr. Aceves identified the Ford as his, and said it had been in working order, with a battery and no broken window, when he had parked it.

Deputies Guerrero and Kunz drove Mr. Aceves to where defendant had been stopped again by the backup unit. Defendant and Mr. Hernandez were seated in the back of the patrol car that had stopped them. The batteries were still sitting on the back seat of defendant's car with the other personal items. When Deputy Guerrero showed Mr. Aceves the batteries, he identified the larger of the two batteries as his. Deputy Guerrero gave the battery back to Mr. Aceves and drove him home.

3

Mr. Aceves placed the battery back in his car, hooked it up, and the car started right away. Mr. Aceves never gave anyone permission to remove the battery from his car, and had never seen defendant before.

The deputies placed defendant under arrest. During a patdown search of defendant, additional broken pieces of sparkplug were found in one of his pants pockets, as well as a socket wrench that was the "perfect size" for use on the terminals of a car battery.

Defendant was charged by information with one count of second degree burglary of a vehicle (Pen. Code, § 459; count 1), and one count of petty theft with a prior (§ 666, subd. (b); count 2). It was also specially alleged defendant had suffered two prior qualifying convictions within the meaning of the "Three Strikes" law (§§ 667, 1170.12), and three prior prison terms within the meaning of section 667.5, subdivision (b).

The case proceeded to a jury trial on June 26, 2014. Deputy Guerrero and Mr. Aceves attested to the above facts.

Defendant did not testify on his own behalf, but offered the testimony of his fiancé, Denise Hobbs. Ms. Hobbs said she had known defendant for five years. They were currently homeless, but she generally stayed with her brother. Sometimes defendant stayed with his mother, but he mostly lived out of his car. Defendant was with her on the night of January 23, 2013 at her brother's apartment in Bellflower until about 11:00 p.m. During that time period, defendant was working two security jobs, and had held those jobs for a couple of years. He would provide security at different events or act as a guard. She said that about a week before the incident, defendant had acted as a night watchman at a burned out property.

Ms. Hobbs said she had a lot of her personal items stored in defendant's car, including some clothes, shoes, some memorabilia and her roller blades, and identified those items from a photograph taken of the backseat of defendant's car. She and defendant did not have any place to store their personal belongings so they had to keep most of them in defendant's car. Defendant's mother would not let him keep anything at her home. She lived in the projects and everything would get stolen anyway. She said

4

her brother also did not let her keep anything at his place. She believed most of defendant's personal items were in the trunk of the car.

Ms. Hobbs said defendant had a couple of batteries in the back of his car for a few weeks prior to the incident, and she had even complained to him about it, because she believed it was dangerous for them to be stored in there. She was afraid they would leak on everything. She believed he had one of the batteries as a spare for the car, and the other one was for their "ATV type of toy." Ms. Hobbs explained defendant's car broke down on a "regular basis," and he kept a lot of tools and things in the car and was constantly trying to fix it.

The jury found defendant guilty as charged. Defendant was sentenced to four years in state prison and awarded 490 days of custody credits.

This appeal followed.

## DISCUSSION

**1.     The Exclusion of Defense Evidence.**

Defendant contends the court abused its discretion and violated his constitutional right to present a defense by refusing to allow his proffered evidence of the lack of motive.

"Under Evidence Code section 352, the trial court enjoys broad discretion in assessing whether the probative value of particular evidence is outweighed by concerns of undue prejudice, confusion or consumption of time. [Citation.] Where, as here, a discretionary power is statutorily vested in the trial court, its exercise of that discretion 'must not be disturbed on appeal except on a showing that the court exercised its discretion in an arbitrary, capricious or patently absurd manner that resulted in a manifest miscarriage of justice. [Citations.]' [Citation.]" (*People v. Rodrigues* (1994) 8 Cal.4th 1060, 1124.)

Defendant sought to elicit testimony from defendant's fiancé, Ms. Hobbs, regarding an expected financial settlement in an unrelated civil matter. The following colloquy occurred during the testimony of Ms. Hobbs.

"Q     Did the two of you have any kind of plans together?

5

"A      Well, he was working two jobs so that –

"[THE PROSECUTOR:]  Objection.  Relevance.

"THE COURT:  Sustained.

"[DEFENSE COUNSEL:]  Can we just briefly approach, Your Honor?"

At sidebar, counsel argued:

"[DEFENSE COUNSEL:]  It . . . was going to be very brief limited inquiry.  It goes to motive, see if they did have any kind of future plans together.  My understanding is, based on talking with him, they were waiting for some kind of settlement.  They wanted to try and move and get a place together.

"THE COURT:  Yeah.  I'm going to sustain the objection.  Her motive is not relevant.  Her credibility is relevant.  But the fact that they may be receiving some type of financial settlement has nothing to do with her credibility.

"[DEFENSE COUNSEL:]  If they knew they were waiting for some kind of settlement down the road and he is working a couple jobs, why would he steal car batteries?

"THE COURT:  Yeah, that's sustained."

Defendant contends the exchange establishes the trial court failed to understand the relevance of the proffered testimony and failed to apply the correct legal standard in assessing its admissibility.  Defendant contends it was imperative for the jury to hear that defendant had other financial prospects that would tend to show he did not have a motive for burglarizing cars.  Respondent contends it can be inferred from the court's statements that it made an assessment of admissibility under Evidence Code section 352 and properly determined that the proffered testimony was only marginally relevant.

We agree with defendant that the trial court initially understood defendant's offer of proof as relating to Ms. Hobbs's motive and credibility.  We are not persuaded, however, that defense counsel failed to clarify the purpose of the offer of proof; or that the trial court would have had any difficulty understanding the defense wanted to show that if defendant was expecting a settlement, he would have no motive to steal car batteries.  Though the written record does not report the trial court's tone of voice, we

6

have no difficulty assessing the court's one word response to the offer of proof -- "Yeah" -- as conveying a wry but clear statement that the court found the relevance of such evidence extremely dubious.

In any event, defendant has not shown any prejudice. The evidence presented through Deputy Guerrero and the victim, Mr. Aceves, demonstrated that defendant had been driving his car less than five miles per hour, with the headlights off, in the early morning hours, along a street with parked cars. When stopped by Deputy Guerrero, an apparent accomplice who had been on the street amongst the parked vehicles appeared and joined defendant. Defendant's car was filled with an eclectic assortment of items, including a car battery. There were broken sparkplugs on the dashboard which Deputy Guerrero knew from experience were commonly used by burglars to break windows. Defendant gave mixed and guarded responses to Deputy Guerrero's straightforward questions about the items in his car. A couple of blocks from defendant's initial detention by Deputy Guerrero, Mr. Aceves's car was located with a broken window, the hood up, and the battery missing. During a patdown search of defendant, more broken sparkplug pieces were found in his pants pockets, along with a socket wrench.

In light of the strong and largely uncontradicted evidence tending to establish defendant's guilt in the burglarizing of Mr. Aceves's vehicle and the theft of the battery, we fail to see how admission of the weak motive evidence could have helped defendant in any way.

## 2. The Jury Instructions.

Defendant contends the court committed prejudicial error by instructing the jury with partisan and argumentative instructions on consciousness of guilt (CALCRIM No. 371) and possession of stolen property (CALCRIM No. 376). We review a claim of instructional error de novo. (*People v. Alvarez* (1996) 14 Cal.4th 155, 217.) We are not persuaded there was any error.

The court instructed, over defense objection, with a modified version of CALCRIM No. 371 as follows: "If the defendant gave a false statement, that statement may show that he was aware of his guilt. If you conclude that the defendant made such

7

an attempt, it is up to you to decide its meaning and importance. However, evidence of such an attempt cannot prove guilt by itself."

The Supreme Court has rejected similar challenges to the CALJIC instructions related to consciousness of guilt, including CALJIC NO. 2.03, explaining that "[t]hese standard instructions explicitly state that any inference regarding guilt to be drawn from the circumstances described by them—a willfully false or misleading statement, destruction or suppression of evidence, and flight—is permissive and insufficient alone to prove guilt." (*People v. Tully* (2012) 54 Cal.4th 952, 1024.) The Supreme Court has concluded the instructions are not improper pinpoint instructions favorable to the prosecution. The " 'cautionary nature of the instructions benefits the defense, admonishing the jury to circumspection regarding evidence that might otherwise be considered decisively inculpatory.' [Citations.]" (*People v. Holloway* (2004) 33 Cal.4th 96, 142.)

Arguing by analogy to *People v. Mincey* (1992) 2 Cal.4th 408, which found a proposed pinpoint instruction by the defense to be unduly argumentative, defendant argues CALCRIM No. 371 is similarly defective. Defendant acknowledges that such an argument was rejected in *People v. Nakahara* (2003) 30 Cal.4th 705, 713, but nonetheless urges this court to reconsider the argument that the instruction is argumentative and improper. We decline to do so.

As for CALCRIM No. 376 (possession of stolen property), defendant concedes no objection to that instruction was raised in the trial court, nor did defense counsel seek any modification or clarification of the instruction. The argument is properly deemed forfeited. In any event, similar challenges to CALCRIM NO. 376 have been rejected. (See, e.g., *People v. O'Dell* (2007) 153 Cal.App.4th 1569, 1574-1577.) We see no reason to depart from the sound analysis of *O'Dell* concluding the instruction is not constitutionally infirm.

**3.      The Prosecutorial Misconduct Claim.**

Defendant contends the prosecutor committed repeated acts of misconduct during his closing argument by denigrating the defense witness (Ms. Hobbs), vouching for a

prosecution witness (Mr. Aceves), and urging the jury to misapply the law requiring acceptance of the certified Spanish language interpreter's translation of Mr. Aceves's testimony. Respondent argues defendant forfeited this claim by failing to raise any objections in the trial court, and that, in any event, none of the prosecutor's comments amounted to misconduct.

"When a defendant believes the prosecutor has made remarks constituting misconduct during argument, he or she is obliged to call them to the court's attention by a timely objection. Otherwise no claim is preserved for appeal." (*People v. Morales* (2001) 25 Cal.4th 34, 43-44 (*Morales*); accord, *People v. Turner* (2004) 34 Cal.4th 406, 432 [failure to object or seek court's admonition to numerous comments by prosecutor vouching for the credibility of expert witnesses and expressing his personal admiration for their integrity resulted in forfeiture of claim on appeal].) Forfeiture is justified because the failure to timely object to improper argument deprives the trial court of an "opportunity to consider the objection and give appropriate admonitions when the alleged misconduct first occur[s], or to prevent additional remarks of a similar nature from being made." (*People v. Bemore* (2000) 22 Cal.4th 809, 846.)

As defendant concedes, no objections were raised to the statements he now seeks to challenge on appeal. Defendant has thus forfeited his appellate challenge to the statements. Nevertheless, we briefly discuss the merits because defendant has raised the separate contention that his trial counsel provided ineffective assistance by failing to object.

"A prosecutor's conduct violates the Fourteenth Amendment to the federal Constitution when it *infects the trial with such unfairness as to make the conviction a denial of due process*. Conduct by a prosecutor that does not render a criminal trial fundamentally unfair is prosecutorial misconduct under state law only if it involves the *use of deceptive or reprehensible methods* to attempt to persuade either the trial court or the jury. Furthermore, and particularly pertinent here, *when the claim focuses upon comments made by the prosecutor before the jury, the question is whether there is a reasonable likelihood that the jury construed or applied any of the complained-of*

9

*remarks in an objectionable fashion.*" (*Morales*, *supra*, 25 Cal.4th at p. 44, italics added; accord, *People v. Cole* (2004) 33 Cal.4th 1158, 1202-1203.) In assessing the prosecutor's argument, we must not lose sight of the "presumption that 'the jury treated the court's instructions as statements of law, and the prosecutor's comments as words spoken by an advocate in an attempt to persuade.' [Citation.]" (*Morales*, at p. 47.)

In applying these principles and assessing the challenged statements by the prosecutor, we must consider those statements in context. (See *People v. Dennis* (1998) 17 Cal.4th 468, 522.) We set forth excerpts of the prosecutor's argument, highlighting with italics the statements of which defendant complains.

One of the main themes of the prosecutor's argument was that it strained credibility that defendant was living in his car and that fact alone explained the odd assortment of items found in the car, including the batteries. "Why is he traveling with her stuff? He's homeless. If you were homeless, why are you traveling with your fiancée's stuff? You got to travel light. . . . [¶] . . . [¶] And *I don't mean to be disrespectful, and I am being a little flippant because it's ridiculous. You have to believe the ridiculous in order to buy her story*." (Italics added.)

The prosecutor also discussed the two different statements made by defendant to Deputy Guerrero about where the items came from. "Defendant gave a false statement. . . . [¶] [W]hen you have to come up with a story, it's hard to think it through. It's hard to think it out. Like, 'okay. So, it's my friend's stuff,' right? . . . [¶] But then when it comes to who he is, 'do you have any contact info? Where can we get a hold of him,' that's when it gets dicey, because then you have to start having to come up with specific information. [¶] When you lie, specifics are hard. . . . [¶] When people are being confronted with their lie, it's hard to think it through. *You've got to be a really good liar. I don't believe [defendant's] that good.* [¶] That's what happened on that night, because he knew that property – and *I'm going to argue to you that most of the property in here is stolen. I don't think it belongs to Miss Hobbs at all*. [¶] It just doesn't fit. I'm sorry. You look at the items. Again, somebody who's homeless is not going to be cruisin' around with items that belong in either a storage locker or the back of someone's garage.

10

That's what these items are. I'd ask you to take a closer look when you go back in that jury room." (Italics added.)

Then, during the rebuttal portion of his argument, the prosecutor returned to the credibility of Ms. Hobbs. "[S]*he's here testifying, test-a-lying, for her man, right*? She's got something to lose here. [¶] Her bias, her capacity for bias and her motivation to lie is huge. What does she got to lose? Everything. She's got to lose, in her mind, her man. That's why she'd come in here and lie to you. [¶] *It's not easy for me to get up here and call people liars, especially people that I know. Look, they're trying to do what they think is right. But lying for, you know, your fiancée is not right, but that's what she did*. [¶] Maybe some of those items were hers. I know I was being a little tongue in cheek in my first closing, and, again, I kind of apologize for that. But there's no way that all those items belong to her and [defendant], because someone who lives in their car, staying in their car does not have the random items that are not related to residency. Those are random items that were gotten from different places. Who knows who they belong to." (Italics added.)

Defendant contends the italicized statements amount to misconduct, that the prosecutor expressed his personal beliefs about the veracity of defendant and Ms. Hobbs, and urged the jury to find that the defense was a "sham." We disagree.

A " 'prosecutor is entitled to comment on the credibility of witnesses *based on the evidence adduced at trial*.' [Citation.]" (*People v. Young* (2005) 34 Cal.4th 1149, 1191, italics added (*Young*).) "Referring to the testimony and out-of-court statements of a defendant as 'lies' is an acceptable practice so long as the prosecutor *argues inferences based on evidence* rather than the prosecutor's personal belief resulting from personal experience or from evidence outside the record. [Citations.] Argument may be vigorous and may include opprobrious epithets reasonably warranted by the evidence." (*People v. Edelbacher* (1989) 47 Cal.3d 983, 1030, italics added.) " 'A prosecutor is allowed to make vigorous arguments and may even use such epithets as are warranted by the evidence, as long as these arguments are not inflammatory and principally aimed at

11

arousing the passion or prejudice of the jury.'  [Citation.]"  (*Young*, *supra*, 34 Cal.4th at p. 1195.)

The prosecutor strongly contested the credibility of the defense theory and Ms. Hobbs's testimony, but did so by reference to the evidence in the record.  Simply because he also used the phrase "I believe" a couple of times does not transform his argument into one based improperly on personal opinion.  Rather, the prosecutor repeatedly urged the jury to look at the evidence because he believed that it revealed the lack of merit to the defense ("I'd ask you to take a closer look when you go back in that jury room").  There was no misconduct.

Defendant further contends that the prosecutor essentially vouched for Mr. Aceves's credibility and also improperly urged the jury to not credit the translation of his testimony provided by the certified Spanish-language interpreter.  Once again, we disagree.

During both the direct and cross-examination of Mr. Aceves, there were multiple questions asked about his identification of the car battery in defendant's car.  Defendant points to the response to one question in particular.  The question from the prosecutor was:  "Were you given the opportunity to look at both batteries and decide which one you believed was yours?"  Mr. Aceves responded:  "He said 'this is your battery,' then this is my battery."

Defendant urges that the italicized portion of the following argument regarding that testimony constitutes misconduct:  "So, when [Mr. Aceves] identified the battery, there was a suggestion that the police were suggestive.  Well, I think you heard Mr. Aceves testify.  *There was a little loss in translation*.  What happened was, is when he was asked a suggestive question by the defense, he kind of agreed because he's not a professional witness.  He doesn't realize necessarily how he's saying it.  [¶]  And I don't think [defense counsel] was trying to trick him at all.  I don't.  *But what happens is we get a little lost in translation*.  That's why I thought it was important to go back through a little slower to make sure that he was clear about why he thought – why he was sure that that was his battery."  (Italics added.)

During the rebuttal portion of his argument, the prosecutor revisited the issue, and once again used the phrase defendant finds objectionable, saying: "I submit to you, Mr. Aceves is not a sophisticated witness, and *there was a little lost in translation*, but I'm going to leave that to you. If you think the police went up there, pointed at that battery and said, 'let's go, Mr. Aceves. Let's wrap this up,' I can't stop you from believing that."

We do not find any improper vouching regarding Mr. Aceves, nor any attempt by the prosecutor to have the jury disregard the requirement to rely on the translator's official translation of his testimony. As with the statements regarding Ms. Hobbs, the prosecutor's argument was tied to the record. In follow-up questions designed to elicit clarification of his identification of the battery, Mr. Aceves said the battery he identified as his "looked like the one that had been in my car," and "it was equal to the one I had." He also said "I was asked, like this could be your battery," and "[t]he officer asked me if I thought that was my battery, and I said it was just like mine." When asked if he made the choice as to which of the two batteries was his, Mr. Aceves said "yes." The prosecutor then argued reasonable inferences from those responses that tended to show Mr. Aceves had independently identified his battery, and that perhaps the one oddly worded response may have been the result of a difficult translation. We cannot agree with defendant's characterization that the prosecutor was telling the jury to disregard the official translation or improperly vouching for Mr. Aceves.

A "prosecutor is generally precluded from vouching for the credibility of [his or] her witnesses, or referring to evidence outside the record to bolster their credibility or attack that of the defendant." (*People v. Anderson* (1990) 52 Cal.3d 453, 479 [finding prosecutor's argument extolling the veracity of the police officers based on their years of experience to not be improper vouching but proper argument tied to the evidence in the record].) " 'Prosecutorial assurances, *based on the record*, regarding the apparent honesty or reliability of prosecution witnesses, cannot be characterized as improper "vouching," which usually involves an attempt to bolster a witness by reference to facts outside the record.' [Citation.]" (*Young*, *supra*, 34 Cal.4th at p. 1198, italics added.)

13

The prosecutor's argument was well within the realm of fair comment on the evidence in the record.

**4.      The Ineffective Assistance of Counsel Claim.**

Defendant contends his trial counsel provided ineffective assistance by failing to timely object to the misconduct of the prosecutor. Because we conclude there was no misconduct by the prosecutor, we need not address defendant's claim his trial counsel was ineffective.

**5.      The *Pitchess* Motion.**

Defendant sought pretrial discovery related to Deputies Guerrero and Kunz by way of a *Pitchess* motion. The court granted the motion in part, ordering an in camera hearing of all relevant complaints related to alleged acts by either deputy amounting to an illegal search and/or fabrication of reasonable suspicion or probable cause to detain. The in camera hearing held June 9, 2014, was transcribed by a court reporter and the record sealed. At the hearing, the custodian of records was placed under oath and attested that, as to Deputy Guerrero, there were four complaints that potentially fell within the scope of the court's order. The court described each complaint and found one was discoverable. As to Deputy Kunz, no potentially relevant complaints were produced. The court ordered the disclosure of the one complaint related to Deputy Guerrero.

Defendant requests this court to review the proceedings of his *Pitchess* motion to determine whether or not discoverable material was withheld. Respondent does not object. We have reviewed the sealed transcript of the in camera proceeding and are satisfied the court did not abuse its discretion in ruling on defendant's motion. (*People v. Mooc* (2001) 26 Cal.4th 1216, 1228-1230.)

### DISPOSITION

The judgment of conviction is affirmed.


GRIMES, J.

We concur:

BIGELOW, P. J.                    FLIER, J.


14